JOHN HUBER, United States Attorney (No. 7226)
ROBERT A. LUND, Assistant United States Attorney (No. 9579)
Attorneys for the United States of America
185 South State Street, Suite 300
Salt Lake City, Utah  84111
Telephone:  (801) 524-5682



FILED
U.S. DISTRICT COURT

2016 APR 27 P 4: 23

DISTRICT OF UTAH

BY:
DEPUTY CLERK

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. |
| Plaintiff, | : | INDICTMENT |
| v. | : | |
| CHAD ROGER DEUCHER, | : | Viol. 18 U.S.C. § 1343, WIRE FRAUD; 15 U.S.C. § 78j(b), FRAUD IN |
| Defendant. | : | CONNECTION WITH THE PURCHASE AND SALE OF |
| | : | SECURITIES. |

Case: 2:16cr00189
Assigned To : Nuffer, David
Assign. Date : 4/27/2016
Description:

The Grand Jury charges:

## BACKGROUND

At all times relevant to this Indictment:

1.      Defendant CHAD ROGER DEUCHER ("Deucher") resided in Orem, Utah.

2.      Deucher owned and controlled Marquis Properties, LLC (hereinafter

"Marquis").  Deucher organized Marquis in Utah as a limited liability company engaged

1

in real estate transactions.  Deucher acted as the managing member and President of Marquis.

3.      Deucher marketed Marquis as "a company of experienced property professionals specializing in acquiring, repairing, and managing high quality, cash-flowing properties in several markets across the country."  Deucher claimed that Marquis owned and managed investment properties in desirable areas.

4.      Deucher offered three types of investment options through Marquis:  (1) turnkey cash flow real estate investments; (2) promissory notes secured by real properties; and (3) joint ventures.  Deucher sought investors through direct solicitation, radio advertisements, a website, presentations at real estate and retirement seminars, and by soliciting financial advisors to refer their clients to Marquis.  Deucher provided written sales materials to investors and communicated with them in-person, by telephone, and by e-mail.  In order to induce investors to purchase Marquis securities, Deucher made oral and written misrepresentations about the investments.

5.      Deucher represented that Marquis located, purchased, renovated, and sold single family and small, multi-family homes in lucrative areas of the country.  Deucher told investors that Marquis retained renovation crews, property managers and realtors on the ground to assist with all stages of the projects, eliminating the need for direct involvement.  Deucher guaranteed investors that they would receive a full return of the principal invested and returns in the form of rental income, interest payments, and/or

2

profits from the sale of properties.  Deucher represented that investments with Marquis were safe, low-risk, or risk-free because he would secure investment proceeds by a first deed of trust on property wholly owned by Marquis and that he would "over-collateralized" the investments.  Deucher omitted to disclose to investors that the properties Marquis offered as collateral were not owned by Marquis, were substantially encumbered, and/or were in uninhabitable or blighted condition; that Marquis was insolvent and unable to make interest and principal payments to investors according to terms of agreements; and that investor returns were paid from the funds of new investors.

6.      From around March 2010 to around February 2016, Deucher controlled, directed, and operated Marquis as a Ponzi scheme, using funds from new investors to pay returns to earlier investors, based on the false, deceptive, and misleading premise that investor monies would be used solely for the purposes of purchasing and rehabilitating distressed real property in various areas of the United States.  In total, Marquis collected about $28,000,000 from about 250 investors, most of which Deucher directed, controlled, and used for purposes other than what he promised investors.

## THE SCHEME AND ARTIFICE TO DEFRAUD

7.      The Grand Jury realleges and incorporates by this reference the allegations in paragraphs 1 through 6 above.

8.      From around March 2010 to around February 2016, in the Central Division of the District of Utah and elsewhere,

3

**CHAD ROGER DEUCHER,**

defendant herein, knowingly devised and intended to devise a scheme and artifice to

defraud and to obtain money and property by means of materially false and fraudulent

pretenses, representations, and promises, and did aid and abet and willfully cause the acts

alleged herein.

## MANNER AND MEANS OF THE
## SCHEME AND ARTIFICE TO DEFRAUD

**CHAD ROGER DEUCHER,**

defendant herein, executed and intended to execute the scheme and artifice to defraud in

the following manner and through the following means:

9.      It was part of the scheme and artifice to defraud that beginning in around

March 2010, Deucher, and others acting at his direction and control, solicited investments

in Marquis and made and caused one or more of the following representations or

omissions of material fact:

   a.  That investment funds would be used exclusively to purchase or rehabilitate
       real property, when in truth Deucher intended to and did divert funds to make
       Ponzi payments to earlier investors, payments for unrelated business expenses,
       and payments for personal purposes;

   b.  That investment funds would be sent to an escrow account at Franklin Escrow
       & Accomodations [*sic*], LLC ("hereinafter Franklin") to purchase and
       rehabilitate the real property, when in truth the Franklin account was not
       operated as a true escrow account, which investors believed would protect their
       money through the real estate closing process, rather it was a simple business
       account which acted primarily as a pass-through account from investors to

4

Marquis;

c.  That investment funds would be placed in the bank accounts of Marquis, and
    would be used exclusively for the purposes of acquisition or rehabilitation of
    the real property, when in truth Deucher intended to and did divert funds to
    make Ponzi payments to earlier investors, payments for unrelated business
    expenses, and payments for personal uses;

d.  That investors could choose to either purchase real property and keep it for
    rental income or purchase real property and sell it in a relatively short time
    period for a significant profit, when in truth many investors were not paid rent
    as agreed and several investors who requested that Marquis sell their properties
    for them, as agreed, were unsuccessful at selling the properties either for
    several months or were never successful at selling the property;

e.  That Marquis owned several properties and would sell from their inventory of
    properties to investors who desired to invest in real estate, when in truth many
    properties sold by Marquis were not owned by Marquis at the time of their sale
    or at the time of the investment;

f.  That investors could lend money to Marquis as a short-term bridge loan which
    would be collateralized by real property, when in truth many loans were not
    collateralized at all or were insufficiently collateralized due to Marquis having
    pledged the property to multiple investors at a time or due to Marquis not
    recording a lien or mortgage on the property on behalf of the investor;

g.  That investors could lend money to Marquis and that the funds would be used
    to purchase properties which would then be presented at real estate investing
    seminars for almost immediate sale, when in truth some properties offered by
    Marquis at real estate investing seminars were never purchased by Marquis and
    the investment money was diverted by Deucher to make Ponzi payments to
    earlier investors, payments for unrelated business expenses, and payments for
    personal uses;

h.  That investors would earn a significant return on their investments.  These
    returns depended on the type of investment being made and varied in length of
    time period.   For example: Some investors were promised approximately 8%
    per year for three years, while others were promised 16 % to 22 % over an
    investment period of about one year when rental income was considered.  Later

5

on in the scheme some investors were promised 12% to 18% for a period of about two weeks to around two months, or 10% for investments of about two to six weeks. In truth, Deucher tailored the terms of the return based on his need for money and what he believed would induce the investor to invest. Further, Deucher intended to and did divert the investors' money for other unauthorized uses, thereby making Marquis incapable of making rent payments and other return payments to many of the investors;

i.  That Marquis would record deeds and/or first position liens on properties in the names of, and on behalf of, the investors in order to secure their investment, and that copies of such recorded documents would be provided to the investor; when in truth Marquis often did not provide copies of deeds to investors and often did not record deeds with the respective county recorder's offices, rather Deucher pledged the same property to multiple investors at the same time or at overlapping times;

j.  Deucher failed to disclose to later investors that he had been sued in civil court numerous times due to non-payment and non-compliance with his finance-related promises;

k.  Deucher failed to disclose to investors that their funds would be used, in whole or in part, to pay returns of earlier investors;

l.  Deucher failed to disclose to investors that their funds would be used, in whole or in part, to pay for personal expenses or general business expenses;

m. Deucher failed to disclose that Quitclaim deeds, Deeds of Trust, Warranty Deeds, and Mortgage Deeds issued to investors as security for their investments were for properties he had already pledged to other investors;

n.  Deucher failed to disclose that Quitclaim deeds, Deeds of Trust, Warranty Deeds, and Mortgage Deeds had not been recorded at county recorder's offices;

o.  Deucher failed to disclose to later investors that several investors had filed complaints against himself and Marquis and that the complaints had not been resolved;

p.  Deucher created the false pretense that there was no risk to investors as their

investments were adequately secured and protected by the real property pledged to them when in fact they were not;

q. Deucher failed to disclose that the securities he offered were required to be registered but they were not registered;

r. Deucher failed to disclose that he was required to be registered or associated with a securities broker/dealer to sell such securities but that he was not so registered or associated;

s. Deucher continued to solicit new investors without disclosing to them that he was not current in paying previous investors; and

t. Deucher did not disclose that he paid commissions to investors and others to refer new investors.

8.      It was further part of the scheme and artifice to defraud that Deucher caused investment funds intended for the acquisition or rehabilitation of the real property to be received and deposited into one or more of the following accounts:

a. MARQUIS PROPERTIES, LLC at U.S. BANK, which he controlled;

b. CHAD R. DEUCHER at U.S. BANK, which he controlled;
c. MARQUIS ENTERPRISES, LLC at U.S. BANK, which he controlled;

d. MARQUIS PROPERTIES, LLC at WELLS FARGO BANK, which he controlled; and

e. FRANKLIN ESCROW & ACCOMODATIONS [*sic*], LLC at JPMORGAN CHASE BANK, which he controlled through a verbal agreement with G.E.R.

9.      It was further part of the scheme and artifice to defraud that Deucher caused the unauthorized transfers of several millions of dollars of client investment funds from the Marquis accounts, the Franklin account, and personal accounts he controlled for his

own business and personal interests unrelated to acquisition or rehabilitation of the real property.

      10.    It was further part of the scheme and artifice to defraud that Deucher lulled investors through, among others, one or more of the false promises, representations and omissions of material facts identified below in order to continue his unauthorized use of investor funds, persuade investors to grant Deucher more time to make repayment, to persuade investors to continue to wait for the promised return of their investments, and to not involve attorneys and or authorities:

    a.  False statements about the status of the purchase and/or rehabilitation of the real property;

    b.  Statements about the status of the sale of the real property;

    c.  False statements that he had real estate closing transactions pending which would close shortly, the proceeds of which would be used to repay the investor;

    d.  Statement to at least one investor that if he involved an attorney then he would not get one cent back;

    e.  False promises about expected profits;

    f.  Paying new investment funds to older investors to create a "Ponzi effect"; and

    g.  The purchase and rehabilitation of real property was yielding a return on investment.

      11.    It was further part of the scheme and artifice to defraud that on or about January 20, 2015, Deucher signed a "Secured Promissory Note" and provided it to R.H.

8

The promissory note related to an investment with Marquis, made by R.H. in the amount of $50,000.00 on or about January 20, 2015, wherein Marquis agreed to pay back R.H. his investment money plus a funding fee of 12% ($6,000.00) by March 6, 2015. The promissory note indicated that R.H. would be in the "primary (first) position" with respect to the promised collateral, which was described as a certain property in Duval County, Florida, notwithstanding that another Deed of Trust, signed and dated by Deucher on or about December 18, 2014, relating to the same property and offering collateral described as a "first trust position" to T.G., another investor, was filed or was caused to be filed with the Duval County Recorder's office by Deucher just five days previous to R.H.'s investment.

## COUNTS 1-18
### 18 U.S.C. § 1343
### (Wire Fraud)

12.     The Grand Jury realleges and incorporates by this reference the factual allegations in paragraphs 1 through 11 above.

13.     On or about each of the dates identified below, in the Central Division of the District of Utah, and elsewhere,

### CHAD ROGER DEUCHER,

defendant herein, for the purpose of executing and attempting to execute the scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, transmitted and caused to be

9

transmitted in interstate and international commerce by means of wire, radio, and television communication, writings, signs, signals, pictures, and sounds, and did aid and abet each other therein, to wit:

| Count | Date | Description of Wire Communication |
|-------|------|-----------------------------------|
| 1 | 04/04/11 | Wire transfer of approximately $25,000 from M.D.M. (The Entrust Group Inc) account at Union Bank of California (in California) to account in the name of Franklin Escrow & Accomodations [sic], LLC at JPMorgan Chase Bank (in Utah). |
| 2 | 04/04/11 | Wire transfer of approximately $25,000 (M.D.M.'s investments funds) from Franklin Escrow & Accomodations [sic], LLC at JPMorgan Chase Bank (in New York) to account in the name of Marquis at U.S. Bank (in Utah). |
| 3 | 09/30/13 | Wire transfer of approximately $60,000 from K.B.1 account at Zion's Bank (in Utah) to account in the name of Marquis at U.S. Bank (in Utah). |
| 4 | 11/18/13 | Wire transfer of approximately $60,000 from K.B.1 account at Zion's Bank (in Utah) to account in the name of Marquis at U.S. Bank (in Utah). |
| 5 | 03/19/14 | Wire transfer of approximately $97,000 (J.W's investment funds) from Marquis account at U.S. Bank (in Utah), to M.D. account at Wells Fargo Bank (in California). |
| 6 | 04/30/14 | Wire transfer of approximately $120,000 from K.B.1 account at Zion's Bank (in Utah) to account in the name of Marquis at U.S. Bank (in Utah). |
| 7 | 09/02/14 | Wire transfer of approximately $75,000 from G.K. account at Wells Fargo Bank (in California), to account in the name of Marquis at U.S. Bank (in Utah). |
| 8 | 09/02/14 | Wire transfer of approximately $175,000 from G.K. account at Mountain America Credit Union (in Utah), to account in the name of Marquis at U.S. Bank (in Utah). |
| 9 | 11/20/14 | Wire transfer of approximately $250,000 from K.B.2 account at Mountain America Credit Union (in Utah), through East Rutherford, New Jersey (via Fedwire), to account in |

| | | the name of Franklin Escrow & Accomodations [*sic*], LLC at JPMorgan Chase Bank (in New York). |
|---|---|---|
| 10 | 11/21/14 | Wire transfer of approximately $248,000 (K.B.2's investment funds) from Franklin Escrow & Accomodations [*sic*], LLC at JPMorgan Chase Bank (in New York) to account in the name of Marquis at U.S. Bank (in Utah). |
| 11 | 12/04/14 | Wire transfer of approximately $140,000 from A.L.P. account at Zion's Bank (in Utah) to account in the name of Marquis at U.S. Bank (in Utah). |
| 12 | 12/04/14 | Wire transfer of approximately $55,000 (A.L.P.'s investment funds) from Marquis account at U.S. Bank (in Utah), to R.H. account at JPMorgan Chase Bank (in Texas). |
| 13 | 12/29/14 | Wire transfer of approximately $100,100 (A.L.P.'s and K.B.1's investment funds) from Marquis account at U.S. Bank (in Utah), to account in the name of A.L.P. at Zion's Bank (in Utah). |
| 14 | 01/09/15 | Wire transfer of approximately $92,000 from K.B.1 account at Zion's Bank (in Utah), to account in the name of Marquis at U.S. Bank (in Utah). |
| 15 | 09/25/15 | Wire transfer of approximately $50,000 from J.S. account at Wells Fargo Bank (in California), to account in the name of Marquis at U.S. Bank (in Utah). |
| 16 | 09/25/15 | Wire transfer of approximately $45,000 (J.S's investment funds) from Marquis account at U.S. Bank (in Utah), to account in the name of K.B.1 at Zion's Bank (in Utah). |
| 17 | 02/06/15 | Wire transfer of approximately $70,000 from D.W. account at America First Credit Union (in Utah), to account in the name of Franklin Escrow & Accomodations [*sic*], LLC at JPMorgan Chase Bank (in New York). |
| 18 | 02/06/15 | Wire transfer of approximately $69,000 (D.W's investment funds) from Franklin Escrow & Accomodations [*sic*], LLC at JPMorgan Chase Bank (in New York to account in the name of Marquis at U.S. Bank (in Utah). |

All in violation of 18 U.S.C. §§ 1343 and 2.

11

**COUNT 19**
**15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. § 240.10b-5; 18 U.S.C. § 2**
**(Securities Fraud)**

14.    The Grand Jury realleges and incorporates by this reference the factual

allegations in paragraphs 1 through 11 above.

15.    On or about each of the dates identified below, in the Central Division of

the District of Utah, and elsewhere,

**CHAD ROGER DEUCHER,**

defendant herein, willfully and in connection with the purchase and sale of a security did:

(a) employ a device, scheme and artifice to defraud; (b) make untrue statements of

material facts and omit to state material facts necessary in order to make the statements

made, in light of the circumstances under which they were made, not misleading; and

(c) engage in acts, practices and a course of business which would and did operate as a

fraud and deceit upon other personas, and did aid and abet therein.

On or about the date identified below, in furtherance of the fraud scheme

described in paragraphs 1 to 11 above, used and caused to be used means and

instrumentalities of interstate commerce and the mails in connection with the following

purchase and sale of securities: On or about 01/20/15, a "Secured Promissory Note was

signed by Deucher and was provided to RH.

All in violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. § 240.10b-5; and 18

U.S.C. § 2.

12

## NOTICE OF INTENT TO SEEK FORFEITURE

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, upon conviction of any offense in violation of 18 U.S.C. § 1343, the defendant shall forfeit to the United States of America any property, real and personal, which constitutes or is derived from proceeds traceable to such violation.  The property to be forfeited includes, but is not limited to, the following:

- A MONEY JUDGMENT equal to the value of proceeds traceable to such offenses.

## SUBSTITUTE ASSETS

If any of the above-described forfeitable property, as a result of any act or omission of the defendant,

> (1)  cannot be located upon the exercise of due diligence;
>
> (2)  has been transferred or sold to, or deposited with, a third person;
>
> (3)  has been placed beyond the jurisdiction of the court;
>
> (4)  has been substantially diminished in value; or
>
> (5)  has been commingled with other property which cannot be divided without difficulty;

It is the intent of the United States, pursuant to 28 U.S.C. § 2461(c) and 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the above-forfeitable property.

A TRUE BILL:

_____
FOREPERSON OF THE GRAND JURY

JOHN W. HUBER
United States Attorney

_____
ROBERT A. LUND
Assistant United States Attorney

14